## HAWKINS DOWNIE CO v HAGAN

Ohio Appeals, 7th Dist, Mahoning Co

Decided May 31, 1935

Henderson, Wilson, Mason & Wyatt, Youngstown, for plaintiffs in error.

465

## OPINION

By CARTER, J.

A great many errors are assigned in the petition in error. However, we will confine ourselves to those enumerated in the brief of plaintiff in error.

The first error assigned in the brief is that plaintiff's petition does not state a cause of action at law, and that defendant's demurrer thereto should have been sustained. The chief ground of error claimed is that under §11305 GC the petition shall, if the recovery of money is demanded, set forth the amount claimed. The exact amount is not set forth in the petition. However, the plaintiff does make claim that

the defendant owes him money under this contract.

It is said in **49 C. J., 151:**

"Where particular facts relating to the cause of action are necessarily known to defendant, a claim is not indefinite because it avers that such facts are unknown to plaintiff and the general rule is that allegations as to facts which are not presumptively within the pleader's knowledge may be made upon information and belief."

And also in Bates Pleading and Practice, 4 Ed., par. 229:

"And the rule as to certainty is also relaxed as to the detail of facts which are more within the knowledge of the opposite party."

Sec **11364 GC** provides, in part, that:

"In every stage of an action the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed or affected by reason of such error or defect."

As said in the case of **Brown v Farr, 19 C.C. (N.S.) 4, 578:**

"A judgment will not be reversed solely by reason of a defect in the petition in failing to aver that the amount claimed is due where issues have been joined and the cause tried on its merits, and it appears from the record that the defective petition did not result in prejudice to the adverse party."

Under the circumstances in this case we are unable to conclude that the defendant was prejudiced in any way by reason of the overruling of the demurrer on the ground that plaintiff's petition did not state a cause of action at law.

As to the failure of plaintiff to comply with the provisions of §11280 GC. This section provides that the plaintiff shall file with the clerk of the court a precipe stating therein the names of the parties to the action, if it be for the recovery of money only, the amount for which judgment is asked, and demanding that a summons issue.

Inasmuch as this case has already been heretofore tried in this court, we do not deem it necessary that another summons issue in compliance with §11280 GC. Certainly no advantage could be gained by defendant in so doing, as this case is a retrial of the case.

As to the second claimed error, to-wit, the answer and cross petition filed April 12th, 1933, praying that all those persons to whom the plaintiff had made assignments of money due him from defendant and all those who had instituted proceedings in aid of execution against defendant by virtue of having recovered judgments against plaintiff, be made parties defendant, and the cross petition praying for judgment against plaintiff by virtue of plaintiff having wrongfully obtained a temporary restraining order enjoining defendant from receiving the final estimate due from the County Commissioners should have been permitted to stand.

It appears that after the overruling of defendant's demurrer to the petition, defendant thereupon filed an answer and cross petition in which defendant set up as far as it was informed, the names of all those persons who had proceeded against it with orders in aid of execution for the purpose of satisfying judgments which they had prior to that time obtained against plaintiff and which remained unsatisfied; and in addition thereto named all those persons as far as it was informed, to whom plaintiff had made assignment of any moneys which might be due plaintiff from defendant, and defendant requested that these persons be made parties defendant and be required to set up the interest which they claimed by virtue of their proceedings in aid of execution or their assignments from plaintiff.

To this answer and cross petition plaintiff filed a demurrer which the court sustained.

Waving aside the claim of defendant in error that by filing an answer following the sustaining of demurrer, this error, if any, was waived, and assuming that the court was in error in sustaining the demurrer, it is the view of this court that the defendant is not prejudicially affected to the extent that there should be a reversal of the case on that issue.

As far as the various claims held by the assignees, we have no doubt but that the defendant can protect himself in the refusal to pay this judgment in full to plaintiff to the extent, at least, of these assignments of which the defendant has knowledge; and also those who have instituted proceedings in aid of execution; the defendant can and will be fully protected by an order of court in those proceedings. However, if there still remains a fear on the part of the defendant that it may be subjected to double liability on account of these claims, this court, under its constitutional power, can modify the judgment to the extent that an

order be made remanding the case to the Court of Common Pleas, allowing the new parties defendant to come in and set up their interest.

See §2, Article IV, Ohio Constitution, also §11364 GC.

The court has the power also to amend the pleadings at this time to conform to the proof.

Kronenberg v Whale, 21 Oh Ap, 322, 344.
Putnam v Commissioners, 102 Oh St, 45.

Now, as to the claim of plaintiff in error that the court erred in sustaining the demurrer to the cross petition, wherein the defendant cross petitioner sought a judgment against plaintiff by virtue of plaintiff having wrongfully obtained a temporary restraining order enjoining defendant from collecting the final estimate due it from the County Commissioners, defendant in its cross petition to which the demurrer was sustained alleged that plaintiff had wrongfully and maliciously and without probable cause instituted and obtained against it a temporary restraining order, restraining it from collecting from the County Commissioners of Mahoning County the final estimate. The cross petition set forth a cause of action for malicious prosecution and claimed it had suffered damages in the amount of some $6500.00, and it is claimed by the cross petitioner that this was a proper counterclaim which was connected with the subject of plaintiff's action and arising out of the transaction set forth in his petition. It is claimed by the defendant in error that such a claim is now barred by the one-year limitation. However, waiving aside the question as to whetherer this action for malicious prosecution was brought within the one-year period as provided in §— GC, and waiving aside the question as to whether these claims set out in the cross petition are under the statute proper items of counter-claims. It appears to the court that these claims, whether set up by way of counter-claim or by way of defense, are not available to defendant. To constitute a counter claim under the statute the cause of action must be an existing one at the time asserted, and it is the claim of plaintiff in error that the court erred in sustaining the demurrer to the cross petition of the defendant, wherein it sought judgment against the plaintiff by virtue of plaintiff having wrongfully and maliciously obtained the temporary restraining order enjoining defendant from receiving the final estimate due from the Commissioners.

It is the claim of the cross petitioner that a cause of action for malicious prosecution is put in issue and that the temporary restraining order obtained resulted in damage to it in the amount of some $6500.00. The plaintiff sought a temporary restraining order which was allowed and for aught that is before us, was issued on proper hearing. We find nowhere in the record wherein the temporary order was on application dissolved by, or through a judicial determination or dissolved by reason of improper or wrongful issuance.

Sec 11876 GC provides as follows:

"Causes for an injunction.—When it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief, or any part of it, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, or threatens or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual, a temporary order may be granted restraining such act. When specifically authorized by statute, such order also may be granted."

Sec 11877 GC provides:

"Who may grant an injunction.—At the beginning of an action, or any time before judgment, the injunction may be granted by the Supreme Court or a judge thereof, the Court of Appeals or a judge thereof in his district, the Common Pleas Court or a judge thereof in his district, or the Probate Court, in causes pending therein upon its appearing to the court or judge by affidavit of the plaintiff, or his agent, that the plaintiff is entitled thereto."

Sec 11880 GC provides:

"Notice of application.—In the opinion of the court or judge, if the defendant, or a party to the suit, should be heard before granting the injunction, a reasonable notice may be required to be given to such party of the time, place and purpose of the application; and such party in the meantime, may be restrained."

Sec 11882 GC provides:

"Bond required.—Unless otherwise provided by special statute, no injunction shall operate until the party obtaining it gives a bond executed by sufficient surety, to be approved by the clerk of the court granting the injunction, in an amount to be fixed by the court or judge allowing it, to

secure to the party enjoined the damages he may sustain, if it be finally decided that the injunction ought not to have been granted."

Under these provisions the court granted the temporary restraining order and we must assume for good reasons, and that the court concluded that the injunction was proper in the case, as a necessary adjunct to the collection of the claim of plaintiff. This temporary restraining order was not dissolved until bond was given by defendant in substitution therefor. It appears from the record that a bond was executed by the defendant to J. A. Hagan in the sum of $20,000.00 staying the operation of the temporary restraining order. This was done for the purpose of releasing the money. There was no dissolution of the injunction by the court or by plaintiff by reason of wrongful issuance and later on this bond was released upon the defendant executing a bond in double the amount of the former finding of the court. And under the later bond the order of the court was to the effect that:

"WHEREAS, said Court of Common Pleas in said cause has ordered that upon the execution of this bond and the approval hereof by and the filing hereof with said Clerk of Courts, the bond heretofore given by defendant to stay the operation of the temporary restraining order heretofore granted against it before trial and upon which the defendant, the Hawkins-Downie Company, is principal and The Fidelity & Deposit Company of Maryland, is surety, shall be released, cancelled, annulled and be of no further force or effect, and that the defendant and surety thereon, The Fidelity & Deposit Company of Maryland, shall be relieved of any and all obligations thereon, either past, present or future, by virtue of said bond having been executed by them, provided that this bond shall be a lien upon all properties owned and possessed by defendant and sureties."

Thus indicating clearly that the court would not dissolve the temporary restraining order by reason of the claimed wrongful securing of same. It appears to this court that there has been no termination of the injunction or cause favorable to the defendant a necessary predicate on which to base a cause of malicious prosecution. On the other hand, plaintiff has on two different occasions secured a judgment in his favor in the cause out of which plaintiff secured the injunction.

There are three essential elements in a cause of malicious prosecution:

1. Malice.
2. Want of probable cause.
3. That the proceeding complained of had theretofore terminated in favor of the defendant before a suit for damages for malicious prosecution may be brought.

This injunction was secured for the apparent purpose of securing the payment of any judgment that might be recovered in favor of the plaintiff against the defendant. Had the plaintiff failed in securing a judgment against the defendant; in other words, had the action terminated favorable to the defendant or the injunction dissolved by reason of wrongful issuance, the case would then present a different aspect. We are unable to see how the defendant at that stage of the case could maintain its cross petition against the plaintiff as there had been no termination of the cause of action or injunction in favor of the defendant.

It is claimed in the brief of plaintiff in error that the Court of Appeals had heretofore dissolved this temporary restraining order. We have examined the record in its entirety, together with the opinion of the Court of Appeals heretofore rendered, and we are unable to find anywhere where this court dissolved the injunction on the ground that it was wrongfully instituted.

In the case of Fender v Ranney & Phillips, 62 S.E.P. 527, the second paragraph of the syllabi reads as follows:

"Where a plaintiff brought an action against a defendant to enjoin interference with timber and to recover damages, the defendant could not in the same cause by way of cross-petition recover damages against the plaintiff on the ground that the suit was instituted and prosecuted without probable cause and damages had resulted to plaintiff by reason thereof."

The court say:
"As to the claims made by the cross-petitioner it appears to us that this action must terminate favorable to the cross-petitioner before he can institute an action for malicious prosecution and therefore could not be litigated prematurely in this action."

We are of the opinion that under the circumstances in this case that the court properly sustained the demurrer to defendant's cross petition.

As to the claim that the answer of the defendant company, filed September 25, 1933, setting forth the expenses incurred by it in having the temporary restraining order obtained by plaintiff against it dissolved, and allocating that expense as the part of the cost of performance of the contract, should have been permitted to stand. It is the claim of plaintiff in error that this expense was incurred by reason of the injunction having been improperly secured and in seeking to dissolve same. It could scarcely be claimed that this is a proper overhead charge under the arrangement between these parties. It is clear to the court that the defendant would have no right to assert such a defense at the time it did so, as such a defense would be premature, as in the case of the counter claim by which defendant sought to set up these matters by way of cross petition. We are unable to see how such a defense could be asserted in this suit. These claims are of an affirmative nature and call for affirmative pleadings, procedure involving burden of proof, as in an original action. We therefore conclude that the court ruled properly in this matter and that such were not proper claims to assert by way of defense.

As to defendant's motion for a directed verdict at the close of plaintiff's evidence, and defendant's similar motion at the close of all the evidence, on the ground that the action was prematurely brought, in that the final estimate had been neither figured nor paid at the time of the filing of plaintiff's petition, and that plaintiff was not entitled to any money at the commencement of this action. This claimed error has been heretofore disposed of in this opinion and we are satisfied that the court committed no prejudicial error in overruling the motion for a directed verdict at the close of plaintiff's testimony and at the conclusion of all the testimony. At the time of the trial of this cause to the jury, to-wit, the second trial, these matters had all been gone into. Defendant knew the claims of plaintiff, the injunction had been suspended by reason of giving bond, the estimate released by the Commissioners and we are unable to see how the defendant could be prejudiced by reason of the fact that the final estimate had been neither figured nor paid at the time of the filing of plaintiff's petition, even though the claim of plaintiff in error in this regard be technically correct. We have heretofore made some observations along this line under the first ground of error herein.

As to the claimed error in that the trial court permitted the introduction in evidence of plaintiff's exhibit B, it being an audit made by plaintiff's accountants computing the amount due plaintiff, and also that the trial court erred in charging the jury that in arriving at the verdict they might use a reasonable overhead, when plaintiff's contention was that the overhead allowed the defendant was limited to $1,000.00. Plaintiff's exhibit B was an audit made by plaintiff's accountants on the basis of a reasonable overhead.

We find nowhere in this record where the defendant claims that there was a specific amount agreed upon, but claims that by the terms of the contract between it and plaintiff the net profit was to be determined by defendant's auditors, Clark & Collins, by their annual audit of defendant company's books for the year 1930. This audit to be made in the same manner as had previously been employed by that firm of accountants in their annual audit of defendant company's books in preceding years. That the cost of all contracts completed during the year was totaled and the overhead of defendant company for that year was also totaled and each contract performed by defendant company was charged with that portion of the total overhead for the year. Objection was made to the introduction of plaintiff's Exhibit B, overruled and exceptions noted. The plaintiff bottomed his claim on contract, and claims one of the provisions of the contract was that the overhead was actually fixed at $1,000.00. That part of the contract that the overhead was fixed at $1,000.00, as claimed by plaintiff, and claimed that the agreement was as above set forth. The plaintiff put in evidence his audit known as Exhibit A, based on his claimed contract with defendant, using $1,000.00 as the overhead, indicating the amount due him on that basis. Exhibit B was an audit based upon what the auditors claimed was a reasonable overhead allowance, and it is claimed that this audit was incompetent and highly prejudicial. It indicated $37.88 in excess of the $1,000.00 overhead claimed by plaintiff. This evidence was introduced in chief by plaintiff. Plaintiff justifies the introduction of this evidence under the holding of the court in the case of **Knott v Moore, Lamb Construction Company, 111 Oh St, 94,** wherein the court held that:

"In an action to recover an amount due on a contract for building when the testimony is conflicting as to the price agreed upon for the building, it is competent to

show the estimated value of such building at the time the contract was made as tending to show what the agreed price was. Such evidence is also competent for the purpose of impeaching the credibility of witnesses as to the actual cost of the building in an action to recover an amount due on a cost plus building contract, when an issue is made by the pleadings as to the total cost of the construction, it is competent to show the reasonable cost of labor at the time the labor was performed as tending to show what the actual cost was."

However, assuming that the introduction of Exhibit B in chief was error, was it prejudicial? There can be no question but that plaintiff could have introduced this evidence in rebuttal of the audit made by defendant's auditors, for the defendant testified, on page 295 of the record, as to what were proper items to be charged as overhead, which should be computed before net profits should be determined. Rebuttal evidence to refute defendant's claim as to what were proper items of overhead was competent. The plaintiff had the undoubted right to introduce Exhibit B to establish what he claimed to be proper overhead charges. Defendant's auditors testified as to what were proper items and plaintiff's auditors testified as to what were reasonable items included in overhead charges. We are unable to see how it made any particular difference in the outcome in this case, whether plaintiff's Exhibit B was put in evidence in chief rather than in rebuttal. Assuming that such was incompetent in chief, in the final determination of the case, all this evidence was before the jury for their consideration, whether in chief or in rebuttal, and the jury made their finding based on the whole evidence.

Bowers on Judicial Discretion, page 467, uses the following language: (11 N.P., N.S., 161).

"In the exercise of a sound and reasonable choice the trial court may either permit or refuse to permit the introduction in chief of evidence that strictly should be reserved for rebuttal purposes.

This is merely a rule of evidence and involves no substantial right and a ruling either way can seldom result in injury."

While this was a departure from the ordinary course of procedure, however, unless there was an abuse of discretion such should not be disturbed. In this there was no abuse of discretion. We are satisfied that the defendant was not surprised as the case had been heretofore tried, and further there was no motion directed to the court for a withdrawal of a juror and the continuance of the case if such constituted a surprise as claimed by the defendant.

It is to be borne in mind that the question of overhead was but one item of the contract. Plaintiff brought his action on the entire contract. It could hardly be said that if plaintiff failed to establish this item as claim he could not recover even though he had established all the other claims as alleged. True, this item was in dispute and out of that dispute the jury fixed the amount of overhead at $1033.88. On what basis we do not know, except that it was not based on plaintiff's claim of $1,000.00. This was in no wise tested by interrogatories and we may well assume that the jury adopted the claim of defendant fixing the proper or reasonable overhead at $1033.88, instead, as shown by defendant's audit, of something over $19,000.00. It is true there was a wide divergence between the claims of the parties with reference to proper overhead charges. However, this was a question of fact for the jury to determine and it followed the audit made by plaintiff's accountants.

As to the claim of plaintiff in error that it was entitled to a judgment notwithstanding the verdict in answer to a certain interrogatory submitted to the jury. This interrogatory which was submitted was as follows:

"Q. Did the contract between the parties provide for a division of profits when the contract with Mahoning County was finished, or did it provide for a division of the profits after the books of the Hawkins-Downie Company for the year 1930 had been audited?

A. Not shown."

The jury did not answer the interrogatory at all. The question presented was "Did the contract between the parties provide for a division of profits when the contract with Mahoning County was finished, or did it provide for a division of the profits after the books of the Hawkins-Downie Company for the year 1930 had been audited?"

The question was not, "Did the evidence show whether there was to be a division of the profits when the contract with Mahoning County was finished and the books of the Hawkins-Downie Company for the year 1930 had been audited?" But, "Did the contract between the parties provide for a division of the profits when the contract with Mahoning County was fin--

474

ished, or for a division of the profits after the books of the Hawkins-Downie Company for the year 1930 had been audited?" There was no request for the jury to further consider this interrogatory in an attempt to answer the same. Under either audit the plaintiff was entitled to a substantial amount. Assuming that the jury found that there was to be a division of the profits after the books of the Hawkins-Downie Company had been audited, as claimed by the defendant, in what way could it prejudicially affect the plaintiff in error? In other words, in what way could or would that fact have reduced the amount the jury returned in favor of the plaintiff, except as to the time from which interest was to be computed? It would not in any way change the principal amount as found due to the plaintiff. Under the claims and testimony of plaintiff there did exist a cause of action at the time of the institution thereof. The last trial of this cause was had in November, 1933, more than three years after the audit had been made. In the light of the observations heretofore made in this opinion, the court did not commit prejudicial error in overruling the motion for judgment notwithstanding the verdict.

As to the claim that the testimony of the plaintiff was entitled to no credit, Ohio does not follow the old Common Law Rule, "False in one thing, false in all." Assuming that the witness did prevaricate in certain respects in the trial of this case, nevertheless, it is the province of the jury to weigh the testimony and give that testimony such credence as it may see fit. The jury is to determine the case from a consideration of all the evidence submitted. That the finding of the jury was against the manifest weight of the evidence, will say that this case has been tried twice. Once directly to the court and a second time to a jury, and in both instances a verdict has been rendered in favor of the plaintiff. It is true that the jury returned a somewhat larger verdict than did the court. However, we are not inclined to disturb it as being manifestly against the weight of the evidence.

There were no special interrogatories submitted as to whether the contract in this respect was as claimed by plaintiff or as claimed by defendant. The jury may have determined that the contract was as claimed by the defendant, but found that a proper and reasonable charge was $1037.88 for overhead under defendant's claimed contract. That became a question of fact for the jury. Supposing that the jury did find, as a matter of fact, that the contract was as claimed by the defendant, but that a proper

and reasonable overhead was $1037.88. Could it be claimed logically that the plaintiff would not be entitled to recover? And for this reason we do not believe the court erred in his charge to the jury under these circumstances. No specific amount was claimed by defendant as overhead. The charge deals with the amount of overhead.

Now, as to the claim of plaintiff in error that there was misconduct by and between a juror and plaintiff. During the course of the trial and after the jury had begun its deliberations, one of the jurors, as he was coming down the steps of the court house, preparatory to returning to his home at the close of the day, grasped the arm of the plaintiff, who was standing upon the steps, and the following conversation apparently took place between plaintiff and this juror. The plaintiff made this inquiry?

"How does it look?"
The juror responded by saying:
"It looks pretty good."

and something was said about six per cent interest. There is no further evidence before us that there was any attempt upon the part of the plaintiff to in any way influence or corrupt the juror. It is intimated that such a conversation indicated that some further conversation had been had between the juror and plaintiff. However, we cannot, from the record before us, indulge in such an inference. It was indeed an indiscreet act upon the part of this juror and also the plaintiff, and was no doubt the basis for, at least, a proper reprimand by the court. However, we do not think this of sufficient importance to reverse the case on that ground. We might make the further observation that if it came to the knowledge of the defendant that there had been misconduct upon the part of the juror and plaintiff, that that fact should have been made known to counsel for the defendant and the court could have taken proper steps to the extent, if he saw fit, of permitting the withdrawal of a juror. The most that could be claimed from this conversation is that the juror gave the plaintiff some information as to what the probable verdict would be.

This court has spent a great deal of time in considering this case, and we have come to the conclusion that there is no prejudicial error sufficient to require a reversal and retrial thereof. Taking this view, the lower court is affirmed.

Judgment affirmed.

NICHOLS and ROBERTS, JJ, concur.